# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT PADUCAH

**GLENN D. ODOM, II**                                                                                      **PLAINTIFF**

**v.**                                                                   **CIVIL ACTION NO. 5:12CV-P73-R**

**GARY PHERAL** *et al.*                                                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Glenn D. Odom, II, proceeding *pro se*, *in forma pauperis* has filed an amended

complaint (DN 47).[1]  This matter is before the Court for screening pursuant to 28 U.S.C.

§ 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  For the reasons set forth

below, all claims and Defendants will be dismissed from this action with the exception of the

claim against Defendants Vinson and the K.S.P. Mailroom Staff for opening two pieces of

Plaintiff's incoming legal mail from the ACLU outside his presence.

## I.

Plaintiff brings this action against the following nineteen Defendants: (1) Gary Pheral, an

"ex-law librarian" at Kentucky State Penitentiary [KSP]; (2) LaDonna Thompson,[2]

Commissioner, Kentucky Department of Corrections [KDOC]; (3) Philip Parker, the "ex-

Warden" at KSP; (4) Alan Brown, Warden at the Green River Correctional Complex; (5) Joel

Dunlap, "Dep. Warden/Operations" at KSP; (6) Skyla Grief, "Grievance Coordinator/Program

director" at KSP; (7) Duke Pettit, "Dep. Warden/Programs" at KSP; (8) Randy White, Warden,

KSP; (9) Raymond Vinson, "Lt./Mailroom Supervisor/Property Supervisor, KSP; (10) Jamie

---

[1]The Court notes that the amended complaint supercedes and replaces the original complaint.

[2]In order to differentiate the two Thompson Defendants, the Court will refer to this Defendant as
Commissioner Thompson and the other Thompson Defendant as G. Thompson.

Caraway, "Unit Administrator," KSP; (11) John Dunn, Ombudsman, KDOC; (12) James L. Erwin, "Dep. Commissioner," KDOC; (13) Josh Patton, "Case Worker," KSP; (14) C.A. Woodall, III, Circuit Judge, Lyon County; (15) Rebecca Howard, Circuit Court Clerk, Lyon County; (16) Lt. G. Thompson; (17) Lt. Hawkins; (18) "K.S.P. Mailroom Staff"; and (19) the KDOC.  Plaintiff sues Defendants Thompson and Woodall in their official capacities only, Defendants Pheral, Parker, Brown, Grief, Caraway, and Patton in their individual capacities only, and Defendants Dunlap, Pettit, White, Vinson, Dunn, Erwin, and Howard in both their individual and official capacities.  As to the remaining four Defendants, Lt. G. Thompson, Hawkins, KSP Mailroom Staff, and Kentucky DOC, Plaintiff fails to specify the capacity in which he sues them.[3]  The relief Plaintiff seeks is monetary damages, punitive damages, and various kinds of injunctive relief.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is

---

[3]In a civil rights action, it is a plaintiff's affirmative duty to plead the capacity in which he is suing a defendant. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989).  "When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings" to ascertain whether a defendant has been notified of the potential for individual liability.  *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001).  Here, the Court finds that given the nature of the claims that Plaintiff has sufficiently notified the individually named Defendants of the potential for individual liability.

based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

The amended complaint is 71 pages in length. Plaintiff also filed a 15-page accompanying memorandum and a stack of exhibits which he marked A-WWW and 1-261 and which measures approximately 3.5 inches in depth. In the amended complaint, Plaintiff has set

forth his allegations in chronological order including much superfluous factual detail. Rather than engaging in what would be a lengthy and needless recitation of the factual detail provided by Plaintiff, the Court will set forth a summary of relevant factual allegations in its discussion of the individual claims below. The Court notes that for purposes of initial review, the Court is not required to wade through lengthy exhibits to find support for Plaintiff's claims. *See Jinadu v. Fitzgerald*, No. 99-4259, 2000 WL 1359640, at *3-4 (6th Cir. Sept. 15, 2000) ("The district court's duty to construe Jinadu's pro se pleadings liberally did not obligate it to analyze attachments to Jinadu's complaint in order to speculate about the claims Jinadu may be attempting to bring."); *Young Bey v. McGinnis*, No. 98-1930, 1999 WL 776312, at *1 (6th Cir. Sept. 23, 1999) ("[A]t the conclusion of each section, [the plaintiff] refers the court to an attachment consisting of a minimum of fifty pages. The district court's duty to construe Young Bey's pro se pleadings liberally did not obligate it to analyze attachments to Young Bey's complaint in order to speculate about the claims Young Bey may be attempting to bring."). It is Plaintiff's responsibility to allege the facts supporting his claims in the body of his pleading.

**A. Supervisory Liability**

Plaintiff seeks to hold Defendants Parker, Brown, Dunlap, Pettit, White, Dunn, and Erwin liable based on their supervisory positions. Essentially, the allegations made against each of these Defendants are that Plaintiff wrote to them about the alleged wrongful actions and they failed to rectify the situations about which Plaintiff complained. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978); *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416,

421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see Shehee v. Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). To state a claim for relief, Plaintiff must show how each Defendant is accountable because that Defendant was personally involved in the acts about which Plaintiff complains. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).

Here, Plaintiff's claims against Defendants Parker, Brown, Dunlap, Pettit, White, Dunn, and Erwin are based on their denial of his grievances and failure to take the action he sought. Nothing in the complaint sets forth any action taken on the part of these Defendants or shows how these Defendants were personally involved in the alleged wrongful conduct. Thus, Plaintiff has failed to state a claim upon which relief may be granted against these Defendants. Therefore, the claims against Defendants Parker, Brown, Dunlap, Pettit, White, Dunn, and Erwin in their individual capacities will be dismissed from this action.

**B. Eleventh Amendment Immunity**

Under the Eleventh Amendment to the U.S. Constitution,[4] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting §§ 1983 and 1985, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at * 2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985."). The Eleventh Amendment similarly bars the damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

---

[4]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Plaintiff indicates that he sues Defendants Commissioner Thompson, Dunlap, Pettit, White, Vinson, Dunn, Erwin, Woodall, and Howard in their official capacities.  He identifies each of these Defendants as employees of the State of Kentucky.  As such, the official capacity claims against them are barred by the Eleventh Amendment.

## C.  Judicial Immunity

The Supreme Court squarely addressed absolute judicial immunity in the seminal case, *Stump v. Sparkman*, 435 U.S. 349 (1978).  The Court opined that judicial immunity is embedded in the long established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."  *Id.* at 355 (quoting *Bradley v. Fisher*, 13 Wall 335, 347 (1872)).  The law is clear that a judge acting within the scope of his official duties and within his jurisdictional authority is absolutely immune from damages liability.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349; *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000); *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997); *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992).  This immunity confers complete protection from a civil suit.  *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995).

A judge is subject to liability only for nonjudicial actions or if acts which were judicial in nature were taken in the "complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. at 11-12.  Whether or not an act is judicial depends on the nature and function of the act.  *Ireland v. Tunis*, 133 F.3d at 1440.  Two factors are used to perform this functional analysis.  *Id.* at 1441. The Court must first determine whether the act is "a function normally performed by a judge." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. at 362).  The Court must also look at "whether the

parties dealt with the judge in his or her judicial capacity." *Ireland v. Tunis*, 133 F.3d at 1441. A judge acts in the clear absence of all jurisdiction only if the matter acted upon is clearly outside the subject matter of his court. *Id.*; *King v. Love*, 766 F.2d 962, 965-96 (6th Cir. 1985); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984). Acting in error, maliciously, or in excess of his authority is not enough. *Stump v. Sparkman*, 435 U.S. at 356.

Plaintiff alleges that Defendant Woodall dismissed his petition for a writ of mandamus, "dismissed <u>ALL</u> of plaintiff's claims" and went "an extra fifty (50) miles by labeling plaintiff's actions 'frivolous,'" ordered that Plaintiff was no longer allowed to file any actions in Lyon Circuit Court, and denied a "declaration of Rights" without requiring Rebecca Howard to answer or explain. All of the actions Plaintiff claims that Defendant Woodall took were in Woodall's capacity as a judge hearing Plaintiff's legal matters.

Both factors used for the functional analysis indicate that the alleged wrongful acts performed by Defendant Woodall were judicial. Further, there is no indication that he lacked jurisdiction to make the decisions he made. Consequently, the claims against Defendant Woodall are barred by judicial immunity.

Likewise, Defendant Howard, sued in her capacity as the clerk of court, is entitled to immunity for alleged wrongdoing arising out of her judicial or quasi-judicial functions. *Bradley v. United States*, 84 F. App'x 492, 493 (6th Cir. 2003) (finding that the court clerk in performing his judicial and quasi-judicial duties was immune from suit); *Foster v. Walsh*, 864 F. 2d 416, 417 (6th Cir. 1988) ("It is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions."); *Denman v. Leedy*, 479 F. 2d 1097, 1098 (6th Cir. 1973) (finding that "[a]s the plaintiffs' charge relates to an act performed by the Clerk within the scope of his quasi-judicial

8

duties, this defendant is entitled to immunity"); *Davis v. McAteer*, 431 F. 2d 81, 82 (8th Cir. 1970) (stating that "[t]his court and others have specifically held that clerks of court are entitled to immunity to the same as judges").

Plaintiff alleges Defendant Howard responded to his inquiry about the number of copies he needed to file by "showing the Court rules" and informing him that the "[c]ourt will <u>not</u> provide free copies." He alleges that Defendant Howard rejected his petition for a writ of mandamus informing him that he would need to provide a copy for each respondent. Plaintiff further contends that Defendant Howard continuously gives him the runaround and "refus[es] to stick to one policy or court rule." Plaintiff states that he filed a "Petition for Declaration of Rights" against Defendant Howard in the Lyon Circuit Court because he believes she is rejecting his complaints "while secretly telling Skyla Grief that plaintiff only needs two (2) copies." As stated above, this declaration was "denied" by Defendant Woodall. All of the actions about which Plaintiff complains concerning Defendant Howard involve her duties in her capacity as the clerk of court. Thus, she is entitled to immunity.

Accordingly, Defendants Woodall and Howard and the claims against them will be dismissed from this action.

### D. Grievance Limitations

Plaintiff sets forth many alleged instances in which grievances he has filed were rejected or restricted by Defendants Grief and Patton. Prisoners do not possess a constitutional right to a prison grievance procedure. *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346 (6th Cir. 2001); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991). Nor does state law create a liberty interest in the grievance

procedures. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Because Plaintiff has no constitutional right to an effective grievance procedure, *Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991), a failure to follow the grievance procedures does not give rise to a § 1983 claim. *Id.*; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Having failed to allege the deprivation of any right secured by the Constitution or laws of the United States, Plaintiff has failed to state a § 1983 claim as to the alleged denial or restrictions placed upon his filing of institutional grievances. For these reasons, these claims will be dismissed**.**

### E.  Limitations on Legal Copies, Copies of Legal Materials, and Calls to Legal Aid

Plaintiff states that he was denied copies of some legal materials, that his requested number of copies of legal documents and materials on many different occasion was limited, that Defendants processed some of his copy requests in an untimely matter, and that Defendants on occasion returned his materials in disarray. Further, he alleges that his calls to a legal aide were restricted at times and that on one occasion he was assigned a novice legal aid. He makes these allegations against Defendants Pheral, Grief, and Patton. Plaintiff contends that these denials and limitations have resulted in a denial of his constitutional right of access to the courts.

Plaintiff does have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right is denied if prison officials deprive him of a "reasonably adequate opportunity" to challenge his sentence or the conditions of his confinement. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Deprivation of this right "in some theoretical sense" will not establish a violation of the right to access the courts. *Id.* Rather,

Plaintiff must show "actual prejudice to non-frivolous claims." *Hadix v. Johnson*, 182 F.3d 400, 406 (6th Cir. 1999).  In the present case, Plaintiff fails to show "actual prejudice to non-frivolous claims."  Although Plaintiff claims that his Lyon Circuit Court and Southern District of Indiana court cases have been prejudiced by the alleged denials and restrictions, these are unsupported allegations.  Plaintiff has provided the Court with the Lyon Circuit Court documents.  Those documents fail to support Plaintiff's contention that any action or inaction on the part of the prison institution or staff prejudiced his legal action.  *See* Plaintiff's Exhibits 129 & 216.  On the contrary, the Lyon Circuit Court, in a November 19, 2012, order of dismissal stated, "The Lyon Circuit Clerk's records show that this Petitioner has filed five civil actions before this one since April 19, 2012.  Two of those actions were previously dismissed as frivolous pursuant to KRS 454.405.  The present action is malicious or harassing and on its face is legally without merit." *See* Plaintiff's Exhibit 216, p. 2.  That court went on to restrict Plaintiff's ability to file future actions *in forma pauperis*.   Plaintiff also refers to some Southern District of Indiana cases which he contends were prejudiced due to the alleged wrongful acts of Defendants.  A review of the records of that court reveals that Plaintiff has filed five separate civil actions in the Southern District of Indiana.  Two of those cases have been dismissed, but not as a result of any connection to the alleged wrongful actions on the part of Defendants; the other three actions are still pending.  *See Odom v. Prison Health Services et al.*, No. 2:12CV-99-WTL-DKL (closed)[5];

---

[5]Plaintiff alleges that this action was dismissed as a result of Defendant Patton not timely depositing a money order into his inmate trust account.  The records of the Indiana court reflect that the action was dismissed by order dated July 12, 2012.  According to the documents provided by Plaintiff, the money order about which he complains was deposited to his account on April 17, 2012, long before the Indiana court dismissed his action.  *See* Exhibit Y.

*Odom v. Indiana D.O.C.*, No. 2:11CV-66-JMS-DKL (closed)[6]; *Odom v. Ex-Correction Officer Guadalupe Lopez*, No. 2:11CV-144-WTL-WGH (pending); *Odom v. Talens et al.*, No. 2:12CV-251-JMS-MJD (pending); *Odom v. Wynn et al.*, No. 1:13CV-171-SEB-MJD (pending).  A review of the public district court records in the PACER system reveals that Plaintiff has filed 21 cases in various federal district courts since 2011.  Clearly, Plaintiff's right of access to the Courts has not been denied; thus, this claim will be dismissed.

## F. Retaliation

Plaintiff alleges retaliation on the part of Defendants Pheral, Grief, Vinson, Caraway, and Patton.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff alleges that the protected conduct in which he engaged was filing civil lawsuits and institutional grievances and complaints.  As previously stated, Plaintiff does have a constitutionally protected right of access to the courts.  *Bounds v. Smith*, 430 U.S. at 821.

Plaintiff alleges that the adverse actions taken against him included limiting his grievances, not providing the number of copies he requested, not timely providing his requested copies, returning documents to him out-of-order, removing him to a different cell, and changing

---

[6]The first instance of wrongful action alleged by Plaintiff in the pending case before this Court occurred on February 22, 2012.  This Southern District of Indiana action was dismissed by the district court on June 21, 2011, and the Sixth Circuit on August 29, 2011.  Both dismissals occurred prior to the wrongful actions alleged herein, thus the dismissal of the Indiana action clearly did not result from any wrongful actions alleged in this case.

the legal aid from which he could seek advice.  As discussed above, Plaintiff does not possess a constitutional right to a prison grievance procedure.  *Young v. Gundy*, 30 F. App'x at 569-70; *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x at 348; *Antonelli v. Sheahan*, 81 F.3d at 1430; *Buckley v. Barlow*, 997 F.2d at 495; *Flick v. Alba*, 932 F.2d at 729.

Moreover, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution.  *Olim v. Wakinekona*, 461 U.S. at 245-48; *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-29 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986).  This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet.  Ky. Rev. Stat. § 197.065.  Furthermore, the Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct.  *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001) ("A transfer to the general population of another prison is not considered sufficiently adverse . . . . Further, it is constitutionally permissible for prison officials to transfer an inmate to another prison to give prison staff a respite from his grievances."); *Geiger v. Prison Realty Trust, Inc.*, 13 F. App'x 313, 315 (6th Cir. 2001) (The prisoner failed to allege that his transfer to another institution prevented or deterred him from continuing to write grievances and file lawsuits.); *Friedman v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001) ("It seems clear, however, that a mere transfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity."); *Goddard v. Ky. Dep't of Corr.*,  No. 99-5348, 99-5971,

13

2000 WL 191758, at *3 (6th Cir. Feb. 7, 2000) (The transfer of an inmate to the general population of another prison is not considered sufficiently adverse.).

As for the legal aide change that was made, Plaintiff filed a grievance requesting that he be allowed to continue using his former legal aid.  His request was granted and he was quickly returned to being allowed to utilize the services of his preferred legal aid.  Furthermore, the courts have repeatedly recognized there is no constitutionally protected right of access to the assistance of a legal aide.  *Lewis v. Casey,* 518 U.S. 343, 350 (1996).

Finally, Plaintiff has no right to an unfettered amount of copies.  *See Giles v. Tate*, 907 F. Supp. 1135, 1136 (S.D. Ohio 1995) ("A prisoner . . . has no general constitutional right to free, unlimited photocopying services.").  Actual infringement of a constitutional right must have occurred as a result of the limitation on the number of copies in order to state a constitutional violation.  *See Perry v. Honton*, 213 F. App'x 377, 378 (6th Cir. 2006) (requiring Plaintiff to establish both actual injury resulting from the failure to provide copies and more than mere negligence on the part of defendant).  As previously discussed, Plaintiff has not shown any such injury.

In the present case, Plaintiff has failed to allege that the alleged wrongful actions on the part of Defendants deterred him from continuing to file grievances or other complaints.  In his amended complaint he refers to numerous grievances he has filed since being transferred and attaches copies of some of these grievances.  As previously stated, he has filed 21 civil actions in federal district courts since 2011 and other cases in state court.  He has been provided countless copies by the institution.  Having failed to present facts supporting the elements of a retaliation claim, Plaintiff has failed to state a claim upon which relief may be granted, and this claim will be dismissed from this action.

**G. Shakedown**

According to the complaint, Defendants Hawkins and G. Thompson were involved in one incident of the numerous incidents set forth in the complaint.  As to these two Defendants, Plaintiff states that they ordered two other officers to seize affidavits from Plaintiff.  This came about allegedly after Plaintiff asked an officer Matthews to sign an affidavit for him and showed officer Matthews affidavits that other officers had purportedly signed on Plaintiff's behalf.  According to Plaintiff, he tore up three affidavits and officers took these torn affidavits from him after he was shackled and handcuffed.

Plaintiff has failed to allege sufficient facts to state a constitutional violation as to the seizure of the affidavits.  *See Evans v. Collins*, No. 93-2173, 1993 WL 503352, at *1 (5th Cir. Nov. 17, 1993) (holding that "an inmate's constitutional rights are not violated by a . . . guard's at will cell search, even when the guard loses or destroys an inmate's personal property")*; Magee v. Helsel*, No. C 93 3507 DLJ, 1994 WL 285001 (N.D. Cal. June 9, 1994) (finding that simply alleging the confiscation of an affidavit belonging to plaintiff without explaining its relevance to any legal action in which he was involved was insufficient to state any constitutional claim).  If Plaintiff is alleging the confiscation was retaliation, he has failed to allege that the adverse action was motivated, at least in part, by any protected conduct.  *See Thaddeus-X v. Blatter*, 175 F.3d at 394.  There is nothing in the complaint showing that Defendants Hawkins or G. Thompson were aware of any protected conduct or that the affidavits were being taken from Plaintiff in retaliation for engaging in protected conduct.  If Plaintiff is attempting to set forth a denial-of-access to  court claim as to this incident, he has failed to articulate, as previously discussed, any "actual prejudice to non-frivolous claims" as to this incident.  *See Hadix v. Johnson*, 182 F.3d at 406.

15

For these reasons, Defendants Hawkins and G. Thompson and the claims against them will be dismissed from this action.

**H.  Legal Mail**

Plaintiff makes allegations regarding his legal mail against Defendants Vinson, Patton, and K.S.P. Mailroom Staff.  First Amendment issues may be implicated when restrictions are placed upon an inmate's correspondence.  *United States v. Holloway,* 740 F.2d 1373, 1382 (6th Cir. 1984).  However, lawful incarceration legitimately requires the retraction or withdrawal of many rights and privileges.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).  Prisoners' First Amendment rights can be limited for legitimate penological interests.  *Turner v. Safley,* 482 U.S. 78, 89 (1987); *Bell v. Wolfish,* 441 U.S. 520, 562 (1979).  Outgoing mail may be regulated to "further an important or substantial governmental interest unrelated to the suppression of expression."  *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

Furthermore, not all violations regarding legal mail rise to the level of a constitutional violation.  *See, e.g.*, *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 WL 52360, at *5 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation."); *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level.").

Plaintiff makes allegations about both his outgoing and incoming legal mail.  Many of these claims involve some back and forth between Plaintiff and mailroom personnel regarding

16

Plaintiff's compliance with administrative policies regarding the mail.  Most of these instances resulted in the mail eventually being sent or received.  Plaintiff's allegations regarding mail being refused and returned to him to complete an administrative task prior to mailing do not rise to the level of a constitutional violation.  However, other allegations regarding mail that do not involve compliance with administrative policies and procedures are also included in Plaintiff's complaint.

As to the outgoing legal mail claims, Plaintiff alleges that he believes outgoing legal mail was not sent because he failed to receive a correct "CPO"[7] and that the recipient failed to receive a document.  He states that the institution looked into this allegation and determined that Plaintiff's mail was being processed properly.  Further, as to Plaintiff's allegation that Defendant Patton refused to seal outgoing legal mail in Plaintiff's presence, Plaintiff has failed to allege that this was done in order to suppress or had the effect of suppressing expression.  Plaintiff also makes allegations regarding his incoming legal mail.  Plaintiff's allegation that Defendant Vinson rejected legal mail sent to Plaintiff from an inmate at Eastern Kentucky Correctional Complex fails to allege a constitutional violation.  From the documents Plaintiff has provided to the Court, Plaintiff was sent a notice regarding the rejection and the reasons for the rejection.  Again, Plaintiff's own non-compliance with the administrative policies and procedures of the institution does not rise to the level of a constitutional violation.  Likewise, Plaintiff's allegation that a package of evidence sent to him from his home was rejected because it was covered in tape fails to state a constitutional violation.  *See Sikorski v. Whorton*, 631 F. Supp. 2d 1327, 1348

---

[7]The Court understands "CPO" to stand for Cash Pay Order.

(D. Nev. 2009) (finding that the prison's policy of screening and prohibiting incoming mail containing stickers and certain adhesives did not state a constitutional violation).

The allegations regarding legal mail from the ACLU being opened outside of Plaintiff's presence, however, will proceed at this point.  Plaintiff has provided the envelopes which he alleges were opened outside his presence.  One envelope has a return address from the ACLU in Louisville, Kentucky.  It is clearly marked, "Privileged & Confidential Legal Mail."  *See* Exhibit 146.  This piece of mail is postmarked August 10, 2012.  The other envelope has a return address from the ACLU in Indianapolis, Indiana.  It is clearly marked, "Legal Mail, Attorney Client Privilege."  This piece of mail is postmarked November 23, 2012.  *See* Exhibit 149.  Plaintiff makes this allegation against Defendants Vinson and the K.S.P. Mailroom Staff.

## IV.  ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the claims against Defendants Vinson and the K.S.P. Mailroom Staff in their individual capacities  for opening two pieces of Plaintiff's incoming legal mail from the ACLU outside his presence **shall proceed** beyond initial review under § 1915A.

**IT IS FURTHER ORDERED** as follows:

(1) That the claims against Defendant Vinson in his official capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) That all remaining claims against all remaining Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

18

(3) That the claims against Defendants Woodall and Howard are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary damages against Defendants who are immune from such relief.

The **Clerk of Court is DIRECTED to terminate** the following Defendants as parties to this action: Gary Pheral; LaDonna Thompson; Philip Parker; Alan Brown; Joel Dunlap; Skyla Grief; Duke Pettit; Randy White; Jamie Caraway; John Dunn; James L. Erwin; Josh Patton; C.A. Woodall, III; Rebecca Howard; Lt. G. Thompson; Lt. Hawkins; and the KDOC.

The Court will enter a separate Scheduling Order governing the development of the continuing claims.  In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:

cc:   Plaintiff, *pro se*
      Defendants
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.003