UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00073-TBR

GLENN D. ODOM, II, Plaintiff,

v.

GARY PHERAL, *et al.*, Defendants.

## MEMORANDUM OPINION

Glenn D. Odom, II, a state inmate proceeding *pro se* and *in forma pauperis*, filed this lawsuit against various Kentucky Department of Corrections' personnel for allegedly opening two pieces of mail from the American Civil Liberties Union outside his presence—an action, he says, that violated his First Amendment rights. Now, the Department of Corrections' personnel seek summary judgment as to those claims. For the following reasons, their Motion for Summary Judgment, [R. 141], is **GRANTED**.

### I.

### A.

During the time period relevant to this action, Glenn D. Odom, II was incarcerated at the Kentucky State Penitentiary. [R. 47 at 11, ¶ 1 (Amended Complaint Part 1).] Odom alleges that two mailroom employees, Diana Yeager and Tammy Smith, as well as the mailroom supervisor, Raymond Vinson, improperly opened two envelopes containing "legal mail" outside his presence. [*See* R. 47-1 at 14, 36, ¶¶ 152, 248 (Amended Complaint Part 2).] The first envelope, postmarked August 10, 2012, is stamped "Privileged & Confidential Legal Mail" and bears a return address for the American Civil Liberties Union of Kentucky in Louisville, Kentucky. [R. 121-1 at 1 (August 10 Envelope).] The contents of that envelope do not appear in the record. The

1

second envelope, postmarked November 23, 2012, is stamped "Legal Mail Attorney Client Privilege" and bears a return address for the American Civil Liberties Union of Indiana in Indianapolis, Indiana. [R. 121-2 at 1 (November 23 Envelope).] The envelope contained a letter from Kenneth J. Falk, an attorney with the ACLU of Indiana, declining to represent Odom in an unrelated civil suit. [R. 121-3 at 1 (Letter).]

It appears as though the mailroom staff opened both the August 10 and November 23 letters. The August 10 letter arrived at the mailroom on August 13, 2012. [*See* R. 121-1 at 1.] Smith and Tina Lamb, another mailroom employee who is not involved in this action, were on duty in the mailroom that day. [R. 141-3 at 2, ¶ 4 (Lockhart's Affidavit).] The mailroom staff did not categorize the August 10 letter as privileged "legal mail" under the Kentucky Department of Corrections' Policies and Procedures (CPP). [*See* R. 141-2 at 2–3, ¶¶ 4–5 (Yeager's Affidavit); *id.* at 18 (Privileged Mail Log).] It seems fair to assume, then, that either Smith or Lamb opened the August 10 letter, as the CPP requires all non-privileged incoming mail to be opened and inspected. *See* CPP § 16.2(II)(B)(2). There is no dispute, however, that Smith opened the November 23 letter. [*See* R. 141-2 at 2, ¶ 4; *id.* at 14 (Opened by Mistake Log).] Since no attorney's name appeared on the envelope, Smith opened it to ascertain whether it was, in fact, privileged mail. [*See id.* at 2, ¶ 4; *id.* at 14.] Upon discovering that the enclosed letter was from a licensed attorney, and therefore "legal mail," Smith logged it as "opened by mistake." [*Id.* at 14.]

### B.

Odom filed this 42 U.S.C. § 1983 action, in pertinent part, against Smith, Yeager, and Vinson for allegedly opening those letters outside his presence. [*See* R. 47 at 1–3; R.

47-1 at 14, 36, ¶¶ 152, 248.] He seeks monetary damages against the trio in their individual capacities, as well as injunctive relief (to cease opening clearly marked legal mail outside inmates' presence) against Vinson.[1] [*See* R. 47-1 at 37–38.] Now, the Department of Corrections' personnel move for summary judgment. [*See* R. 141 at 1 (Motion for Summary Judgment).]

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the Department of Corrections' personnel must shoulder the burden of showing the absence of a genuine dispute of

---

[1] Since Glenn D. Odom, II has been transferred from the Kentucky State Reformatory to the Luther Luckett Correctional Complex, [R. 143 at 1 (Notice of Change of Address)], however, his claim for injunctive relief is moot, *see Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

material fact as to at least one essential element of Odom's claims. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the Department of Corrections' personnel satisfy their burden of production, Odom "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III.

Odom objects to Smith, Yeager, and Vinson opening the August 10 and November 23 letters outside his presence. [*See* R. 142 at 2 (Response); R. 146 at 1–3 (Supplemental Response).] Since those envelopes identified the sender as the ACLU and were marked "legal mail," Odom argues that the letters qualified as "privileged mail" under the CPP. [R. 146 at 1–2.] Smith, Yeager, and Vinson disagree. The trio claims, among other things, that both letters were opened in compliance with the CPP to ascertain whether either was, in fact, privileged mail because neither envelope identified a licensed attorney as the sender. [R. 141-1 at 6–8 (Memorandum in Support).] On that point, Smith, Yeager, and Vinson are right.

Though an inmate's right to receive mail, particularly legal mail, "is protected by the First Amendment," *Merriweather v. Zamora*, 569 F.3d 307, 316 (6th Cir. 2009) (quoting *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)), it is subject to "the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security," *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The Kentucky Department of Corrections has established such policies for opening and inspecting incoming mail, including privileged legal mail.

*See* CPP § 16.2(II)(B)–(C). Under the CPP, all incoming mail, except "privileged mail," must be "opened and inspected or read to determine if contraband is enclosed or any violation of prison rules has occurred." *Id.* § 16.2(II)(B)(2). Incoming "privileged mail," however, is to be opened "in the presence of the inmate [when] inspected for contraband." *Id.* § 16.2(II)(C)(1). The CPP define "privileged mail" as

> correspondence received or sent from or to a licensed attorney, a government official, state or federal courts, officials of Corrections, or the Department of Public Advocacy. Mail shall not be considered privileged mail if it does not concern a challenge to the legality of either the inmate's criminal conviction or the conditions of his incarceration. Information, forms, and the like shall not be considered privileged mail.

*Id.* § 16.2(I). If the "identity of the sender" is not "evident on the face of the envelope or mailing container," the CPP allow mailroom staff to "open and inspect the mail to ascertain whether it is, in fact, privileged mail." *Id.* § 16.2(II)(C)(2).

Here, the August 10 and November 23 missives were not appropriately marked so as to qualify as "privileged mail" under the CPP. *See Merriweather*, 569 F.3d at 313 ("To determine whether [an] envelope is properly labeled, we must first examine the text of the actual regulation at issue."). That is, the "identity of the sender" was not evident on the face of either envelope. CPP § 16.2(II)(C)(2). Though each envelope bore a return address for the ACLU, [*see* R. 121-1 at 1; R. 121-2 at 1], neither identified the sender as "a licensed attorney, a government official, state or federal court[], [an] official[] of Corrections, or the Department of Public Advocacy" so as to bring the correspondence under the definition of "privileged mail," CPP § 16.2(I). Accordingly, under the CPP, the mailroom staff was permitted to "open and inspect the mail to ascertain whether it [was], in fact, privileged mail." *Id.* § 16.2(II)(C)(2).

5

There is nothing constitutionally suspect about the Department's procedures. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), for example, the Supreme Court remarked:

> If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near impossible task of administration would be imposed. *We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment.* It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id.* at 576–77 (emphasis added). Accordingly, the Sixth Circuit Court of Appeals has endorsed Michigan's legal-mail procedure, which treats correspondence from the Michigan Attorney General's office as privileged only if (1) the envelope "contains the return address of a licensed attorney," (2) has "markings that warn of its privileged contents," and (3) the inmate requests ahead of time that the mailroom staff open such letters "in his presence." *Boswell v. Mayer*, 169 F.3d 384, 388 (6th Cir. 1999). Indeed, "requiring that any letter marked 'legal mail' include an attorney's name and bar number" is an appropriate measure to discourage illegitimate use of the prison's mail system. *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 647 (6th Cir. 2015).

In summary, even assuming Smith, Yeager, and Vinson opened Odom's correspondence,[2] no injury of constitutional magnitude resulted. The envelopes, which

---

[2] As an aside, the Court notes that Odom has produced no evidence from which a reasonable jury could conclude that either Raymond Vinson or Diana Yeager opened his correspondence. Yeager was not on duty when the August 10 correspondence arrived in the mailroom, [*see* R. 141-3 at 1, ¶ 4 (Lockhart's Affidavit)], and Vinson denies opening any correspondence from the ACLU to Odom, [*see* R. 146-1 at 32, ¶ 1 (Response to Plaintiff's First Set of Interrogatories)]. Though there is sufficient evidence to support a finding that Smith opened the November 23 letter, [*see* R. 141-2 at 2, ¶ 4 (Yeager's Affidavit); *id.* at 14 (Opened by Mistake Log)], the same cannot be said for Vinson or Yeager about either letter, *see Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012) (affirming grant of summary judgment to mailroom

inadequately identified the sender, "do not conform to [the Kentucky Department of Corrections'] policy and cannot be the subject of a valid claim." *Merriweather*, 569 F.3d at 312 n.2. Therefore, Smith, Yeager, and Vinson are entitled to judgment as a matter of law. *See Horacek v. Seaman*, No. 08-10866, 2009 WL 2928546, at *13 (E.D. Mich. Sept. 10, 2009) (holding letter from the ACLU did "not constitute 'legal mail'" because the "envelope did not indicate that it was from an attorney"); *cf. Lavado v. Keohane*, 922 F.2d 601, 609 (6th Cir. 1993) (finding mailroom staff entitled to qualified immunity for opening letter from the ACLU, since the letter "did not contain an attorney's name nor . . . adequately identif[ied] that the letter was sent by an attorney" as required by federal regulations).

### IV.

Tammy Smith, Diane Yeager, and Raymond Vinson's Motion for Summary Judgment, [R. 141], is **GRANTED**. An appropriate order will issue separate from this Memorandum Opinion.

Date:

cc: Counsel of Record
Plaintiff, *pro se*

---

employee where inmate produced no evidence that employee opened his correspondence); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) (same).